**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

ZIXING YANG,

Petitioner,

v.

CHRISTOPHER LAROSE, Warden, Otay Mesa Detention Center; GREGORY J. ARCHAMBEAULT, Field Office Director, San Diego, Office of Detention and Removal, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General, Department of Justice;

Respondents.

Case No.: 3:26-cv-04296-BTM-MSB

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF NO. 1]**

Pending before the Court is Zixing Yang's petition for the writ of habeas corpus. For the reasons stated below, the petition is DENIED without prejudice.

## I. BACKGROUND

Petitioner Yang was inspected by immigration officials on March 29, 2023, and admitted into the country on a B-1/B-2 nonimmigrant visa. (ECF No. 1-7 ("Decl.") ¶ 2.) His visa expired on September 28, 2023. (ECF No. 5-1 ("NTA"), at 1.) That same day, the Petitioner filed an application for asylum which remains pending. (Decl. ¶ 3.) Later, the Government granted him a work authorization permit. (*Id.* ¶ 4.) On May 20, 2025, the Petitioner married a U.S. citizen. (Decl. ¶ 6.) The Petitioner and his wife applied to adjust the Petitioner's status to lawful permanent resident on July 16, 2026. (*Id.* ¶ 7.)

On July 26, 2026, the Petitioner was detained by military police while delivering packages to Camp Pendleton. (ECF No. 5-2 ("I-213 Rec."), at 3.) Immigration and Customs Enforcement ("ICE") officers interviewed the Petitioner and confirmed that he "did not have legal status" to remain in the U.S. (*Id.* at 5.) The officers then took the Petitioner into custody without a warrant, prior notice, or a hearing. (Decl. ¶ 8; *see* I-213 Rec., 5.) The following day, the Government served the Petitioner with a warrant. (ECF No. 5-3.) The Government also served the Petitioner with a Notice to Appear for removal proceedings on the charge of being removable for overstaying his visa. (NTA, 1.) *See* 8 U.S.C. § 1227(a)(1)(B).

The Petitioner remains detained at Otay Mesa Detention Center. (Decl. ¶ 9.) He filed a petition for the writ of habeas corpus on July 27, 2026. (ECF No. 1 ("Pet.").)

## II. DISCUSSION

The Petitioner requests that the Court order his release because the Government has violated his constitutional rights. The Government claims that the Petitioner has failed to exhaust his administrative remedies and is lawfully detained under 8 U.S.C. § 1226(a). (ECF No. 5 ("Return"), at 2–3, 2.)

### A. Exhaustion of Administrative Remedies

Before addressing the merits of the petition, the Court must determine if the Petitioner has exhausted his administrative remedies. "[A]s a prudential matter," the Ninth Circuit requires that "habeas petitioners exhaust available judicial . . . remedies before

seeking relief under § 2241." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (second alteration in original) (citation omitted). The Court may waive the Petitioner's requirement to request a custody determination if it finds that "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing*, 370 F.3d at 988).

The Court finds that Yang is not required to exhaust his administrative remedies because an Immigration Judge cannot grant him the relief he seeks. Yang argues that the Government's violation of his Due Process rights may only be remedied by an order of release, not a bond hearing. (Pet. ¶ 42.) A bond hearing, he claims, would "ratify" the Government's violation of his right to a hearing prior to his detention. (*Id.* (emphasis omitted)) An Immigration Judge can neither rule on the constitutionality of the Petitioner's detention nor release him without a bond hearing. Because the Petitioner's constitutional claim is not "correctable by the administrative tribunal," the Court finds that his administrative remedies are inadequate and waives his exhaustion requirement. *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995)

**B. Merits**

The Petitioner brings two claims for relief in his petition. First, he contends that his arrest violated Procedural Due Process because the Government detained him without adequate notice or hearing. (Pet. ¶¶ 43–45.) Second, that his detention violates Substantive Due Process because it is not reasonably related to any legitimate purpose. (*Id.* ¶ 48.) The Court addresses each claim in turn.

**i. Procedural Due Process**

The Fifth Amendment entitles noncitizens[1] "to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Once a noncitizen "passe[s] through our gates," he may be removed "only after proceedings conforming to traditional

[1] This order uses the term "noncitizen" as equivalent to the statutory term "alien." 8 U.S.C. § 1101(a)(3); *see Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Due Process also "protects noncitizens from unlawful detention during their removal proceedings." *Esquivel Pacheco v. LaRose*, 818 F. Supp. 3d 1168, 1179 (S.D. Cal. 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Here, the Petitioner challenges his detention as contrary to the Due Process Clause.

To determine the "specific dictates of due process" in this situation, the Court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Beginning with the first factor, the Court recognizes that the Petitioner's interest in remaining "free[] from bodily restraint" lies "at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). But "the private interest of a detained alien under § 1226(a) is lower than that of a detained U.S. citizen." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022). Here, the Petitioner remained in the U.S. after the visa authorizing his presence expired. Although he formed strong ties to the community while remaining at liberty, he was not granted release at the discretion of the Government. *Cf. Esquivel Pacheco*, 818 F. Supp. 3d at 1179 ("By granting release, the government makes an 'implicit promise' that liberty will be revoked only for failing to comply with the conditions of release." (quoting *Young v. Harper*, 520 U.S. 143, 147–49 (1997))). Also, the Petitioner's applications for asylum and status adjudgment remain pending. The Government has not made an "implicit promise" of continued liberty that the Petitioner could rely on. He did, however, remain at liberty for three years and received work authorization from the Government. The Court finds that the Petitioner has a protectable interest in remaining at liberty that is lower than

that of a parolee or citizen. *See Li v. Larose*, No. 26-cv-1614, 2026 WL 948362, at *2 (S.D. Cal. Apr. 8, 2026) (holding that work authorization does not by itself create a liberty interest that warrants a hearing before an arrest).

Second, the Government's process of detaining the Petitioner created a substantial risk that his liberty interest would be erroneously deprived. The Petitioner was given no prior notice that he would be placed under arrest. He was given no paperwork or warrant at the time of his arrest. The record also contains no indication that the Government arrested the Petitioner because it determined that a change in circumstances warranted his detainment. Instead, the Petitioner was stopped while delivering packages, detained by the military, interviewed by ICE, and immediately placed into custody. ICE officers verified the Petitioner's biographical information in their databases. (I-213 Rec., 5.) But they did not provide him an opportunity to rebut the information they reviewed before arresting him. Conversely, a Notice to Appear mailed to the Petitioner's address or other procedural safeguards would have put the Petitioner on notice that his liberty may be revoked and allowed him an opportunity to contest this revocation.

Third, the Government maintains a "strong interest" in preventing noncitizens from "remain[ing] in the United States in violation of our law." *Rodriguez Diaz*, 53 F.4th at 1208 (alteration in original) (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003)). This applies with greater force to noncitizens that the Government has not initially determined to pose no danger or flight risk, such as the Petitioner. *Cf. Mendez Tzoc v. LaRose*, No. 26-cv-3965, 2026 WL 2227161, at *3 (S.D. Cal. Aug. 3, 2026) (There, "the Government . . . required [the Petitioner] to submit fingerprints and biometric information, conducted background and security checks . . . ."). The record here does not indicate that the Government conducted a background check for Yang and determined that he was not a danger or a flight risk. To require notice of possible detention and a predetention hearing before the Government could take into custody a person who is in the country illegally, has not received parole but has a work permit, and has not undergone a background check as

to dangerousness and flight risk would create a tremendous burden on the enforcement of immigration laws and would induce flight by those here illegally.

Altogether, the Government detained an individual with substantial liberty interests without any warning. Nonetheless, the Government's interest in detaining the Petitioner here balances against the Petitioner's interest in being released from custody. The Court is sympathetic to the Petitioner's argument that a post-deprivation bond hearing "is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." (Pet. ¶ 40 (citation omitted).) But based on the facts in the record, the Court is "not convinced that Petitioner has demonstrated a liberty interest in his release requiring any additional due process protections than Petitioner has already received." *Li*, 2026 WL 948362, at *2.

The Petitioner is entitled only to a bond hearing under Section 1226(a) to protect his Due Process rights. Notwithstanding that, from the facts before the Court, the Petitioner has a strong case for release on a bond under the factors set forth in *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024), the Court acknowledges that the Petitioner "does not seek, and does not consent to, an order directing a bond hearing in lieu of release." (Pet. ¶ 41 (emphasis omitted).) The Court will not disregard the Petitioner's request, and so denies this claim in its entirety. The denial is without prejudice to a future request for a bond hearing—in the event that the Petitioner is not given the bond hearing he is statutorily entitled to—or other remedies that the Petitioner may pursue.

//

//

//

//

//

//

//

//

**ii. Substantive Due Process**

The Petitioner claims that civil immigration detention "may serve only two permissible purposes: preventing danger to the community and securing the noncitizen's appearance at removal proceedings." (Pet. ¶ 47 (citing *Zadvydas*, 533 U.S. at 690).) Based on his lack of criminal history and ties to the U.S., the Petitioner claims his detention is not reasonably related to any legitimate purpose and thus violates Substantive Due Process. (*Id.* ¶ 48.)

But the Petitioner's reliance on *Zadvydas* is inapposite. *Zadvydas* analyzed 8 U.S.C. § 1231, whose "basic purpose" is "effectuating an alien's removal." *Zadvydas*, 533 U.S. at 697. The purpose of Section 1226(a) is to authorize the Government to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining [deportable] aliens pending their removal."). It is uncontested that the Petitioner has been charged as removable for overstaying his visa, is being held under Section 1226(a), and is in removal proceedings. (Return, 2; ECF No. 6 ("Traverse"), at 3.) Thus, his arrest and detention are related to the statutory purpose of confining him "pending a decision" on whether he will be ordered removed. The Court denies the Petitioner's Substantive Due Process claim.

**iii. Other Claims**

The Petitioner also raised new issues in his Traverse. He contends that his arrest violated 8 U.S.C. § 1357(a)(2) and the Fourth Amendment. (Traverse, 2, 5–7.) He also argues that a bond hearing offered under 8 U.S.C. § 1226(a) improperly places the burden on him to prove he is not a danger or a flight risk. (*Id.* at 9–10.)

The Petitioner forfeited the claims raised for the first time in his reply brief. *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("Because we do not consider issues raised for the first time in reply briefs, we deem this late-raised argument forfeited."). Assuming these claims were properly raised, they would fail on the merits. To the extent that the Government improperly arrested the Petitioner without a warrant or probable

cause, *see* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(i)–(ii), the Government timely issued and executed an arrest warrant to detain the Petitioner, *see* 8 C.F.R. § 287.3(d) ("[A] determination will be made within 48 hours of the arrest . . . whether a notice to appear and warrant of arrest as prescribed . . . will be issued."). This "effectively cured the violation and terminated any prejudice created by the warrantless detention." *Morales Ortiz v. LaRose*, No. 26-cv-4127, 2026 WL 2392381, at *3 (S.D. Cal. Aug. 17, 2026). The Petitioner also does not explain why the Court should remedy a Fourth Amendment violation by releasing him from custody instead of excluding evidence from his immigration proceedings. *Reyes v. Hermosilla*, No. C25-2525, 2026 WL 528692, at *2 (W.D. Wash. Jan. 15, 2026) ("The remedy for an unlawful arrest in violation of the Fourth Amendment is suppression of evidence, not release from custody."), *report & recommendation adopted*, 2026 WL 525103 (W.D. Wash. Feb. 25, 2026); *see United States v. Garcia*, 974 F.3d 1071, 1075 (9th Cir. 2020) ("The typical remedy for a Fourth Amendment violation is the exclusion of evidence discovered as a result of that violation . . . ."). Lastly, the Ninth Circuit has held that "§ 1226(a)'s procedures satisfy due process, both facially and as applied." *Rodriguez Diaz*, 53 F.4th at 1213. This includes the requirement that a "§ 1226(a) detainee . . . demonstrate[] by a preponderance of the evidence that he is not a flight risk or a danger to the community." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026) (citing *Rodriguez Diaz*, 53 F.4th at 1197). Thus, the claims raised in the Traverse are denied.

## III. CONCLUSION

For the reasons stated above, Yang's petition for the writ of habeas corpus is **DENIED**. The denial is without prejudice to a claim for a bond hearing or other remedies that Yang may pursue in the future.

**IT IS SO ORDERED.**

Dated: October 7, 2026

Honorable Barry Ted Moskowitz
United States District Judge